IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 10-cv-00854-WDM-MJW

LLEWELLYN MILLER,

    Plaintiff,

v.

THE HOME RANCH COMPANY,

    Defendant.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

Miller, J.

This case is before me on the motion for summary judgment filed by defendant, The Home Ranch Company (Home Ranch), on October 6, 2010 (ECF No. 31). The motion is fully briefed, and, after review of the parties' arguments and exhibits, I find oral argument is not required. For the reasons that follow, I will grant the motion.

Background[1]

Plaintiff Llewellyn Miller (Miller), a resident of Connecticut, traveled to Colorado in August 2007 with her sister and other family members to vacation at the dude ranch operated by Home Ranch. Motion for Summary Judgment, Undisputed Material Fact ¶¶ 3, 6 (ECF No. 31). Although Home Ranch offered several activities, Miller testified in her deposition that part of the "attraction" of staying at Home Ranch was the horseback riding

---

[1] The following facts are taken from the parties' briefs and attached exhibits and are undisputed unless otherwise noted.

opportunities available there.  *Id.*, ¶ 7.

Upon arriving at Home Ranch on August 19, 2007,[2] Miller was provided a piece of paper welcoming her to Home Ranch, inquiring about her riding ability, and setting forth a "Waiver and Release" (Release) for her to read and sign.  Miller signed the release without reading it, although she knew at the time she was signing a release.  *Id.*, at ¶¶ 12, 13.  The Release states:

> I acknowledge that participation in any available recreational activities at The Home Ranch ("the Ranch") involves a risk of physical injury.  I also realize that The Home Ranch Company cannot guarantee my safety while engaging in activities during my visit to the Ranch.  I also recognize that any activity utilizing horses can and often does result in injury to the persons who are engaging in these activities and damage to the personal property owned by those persons.
>
> In consideration of use of the Ranch facilities and on behalf of myself, my heirs and assigns, I knowingly and voluntarily assume the risk of death or injury which occurs during my visit to the Ranch.  I unconditionally release The Home Ranch Company, its officers, directors, shareholders, employees and agents (collectively referred to as "the Ranch Parties") from any and all liability and responsibility for any and all injuries, damages, losses, costs and expenses which may occur during or arise from my visit to the Ranch.  On behalf of myself, my heirs and assigns, I give up and waive any rights to make any claim or to proceed in court on any claim which I might have now, or which might arise in the future, against the Ranch Parties as a result of injury or death of myself or damage, loss or theft of my personal property during my visit to the Ranch from any cause whatsoever.  The liability and responsibility unconditionally released by this release is absolute and is not dependent upon nor limited by any questions or findings of negligence.
>
> WARNING!  UNDER COLORADO LAW, AN EQUINE PROFESSIONAL IS NOT LIABLE FOR INJURY TO OR THE DEATH OF A PARTICIPANT IN EQUINE ACTIVITIES RESULTING FROM THE INHERENT RISKS OR EQUINE ACTIVITIES PURSUANT TO SECTION 13-21-119, COLORADO REVISED STATUTES.

---

[2] The date on the waiver signed by Miller is "August 18, 2007."  Miller admitted in her deposition that this was an error.  Motion for Summary Judgment, Exhibit A-2, at 33 (ECF No. 31-2).

Motion for Summary Judgment, Exhibit A-3 (ECF No. 31-3).

On her first full day at the Home Ranch, Miller was assigned a horse, "Calvin," to ride. *Id.*, ¶ 19. From Monday, August 20, to Friday, August 24, 2007, Miller rode Calvin on at least one ride each day. Motion for Summary Judgment, Exhibit A-1, Affidavit of John Fisher at ¶ 13 (ECF No. 31-1). During this time, she never complained about Calvin or asked the Home Ranch to provide her with a different horse. Motion, ¶ 21.

On Saturday, August 25, 2007, Miller was invited to join a group of Home Ranch guests for a ride to a location known as Round Mountain. *Id.*, ¶ 22. She again rode Calvin. *Id.*, ¶ 26. On the ride, and on at least one previous ride, Miller cantered several times; she never indicated any nervousness or apprehension about that pace. *Id.*, ¶¶ 23-25. During the ride, Calvin bucked, throwing Miller to the ground.[3] *Id.*, ¶ 26. Miller sustained serious injuries in the fall. *Id.*, ¶ 28.

Miller filed suit against Home Ranch in the United States District Court for the District of Connecticut. Her single claim, for negligence, has multiple grounds, including, *inter alia*, that Home Ranch failed to hire experienced wranglers and to properly supervise and train its wranglers, and that Home Ranch "knowingly assigned a horse to Mrs. Miller, a novice rider, despite being on actual [and constructive] notice of that horse's violent propensities."[4]

---

[3] In her Complaint, Miller alleges that the Home Ranch wrangler in charge of the Round Mountain ride directed the members of the group to canter back to the barn and that it was during this time that Calvin bucked her off. Complaint, ¶¶ 13-17. She does not provide any summary judgment evidence of this, and her Complaint is not verified.

[4] Miller alleges in her Complaint that Calvin had previously bucked off a Home Ranch guest. Complaint, ¶ 11. Again, she provides no verification or summary judgment evidence of this fact.

Complaint, ¶ 18.  Miller does not allege gross negligence or willful and wanton conduct on the part of Home Ranch.

Following transfer of the case to this Court,[5] Home Ranch moved for summary judgment on the ground that the Release Miller signed upon her arrival exculpates Home Ranch from any liability in connection with Miller's fall and her resulting injuries.  The only issue before me is whether the Release is valid and enforceable under the circumstances of this case.

## Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[6]  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  I construe all facts and make reasonable inferences in the light most favorable to Miller, the nonmoving party.  *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002).  In this diversity jurisdiction case, I apply the substantive law of Colorado.  *Id.*

"The determination of the sufficiency and validity of an exculpatory agreement is a

---

[5] Although no order of transfer appears in the court files of this case, it appears that the Connecticut court agreed with Home Ranch that it lacked personal jurisdiction and/or that venue was improper.

[6] Rule 56 was amended, effective December 1, 2010.  Although the language governing summary judgment was moved from subsection (c) to subsection (a), the standard for summary judgment remains unchanged.  Accordingly, I apply the Rule as amended.  *See* Fed. R. Civ. P. 86(a)(2) (amendments to Federal Rules of Civil Procedure govern proceedings in actions pending at the time of amendment unless: "(A) the Supreme Court specifies otherwise; or (B) the court determines that applying them in a particular action would be infeasible or work an injustice").

question of law for the court to determine." *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981). Although exculpatory agreements are generally disfavored, they are not necessarily void. *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998). Colorado courts apply four factors to determine whether an exculpatory agreement is valid: "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Jones*, 623 P.2d at 376.

In this case, Miller concedes the first two *Jones* factors, leaving me to determine whether the Release was fairly entered into and whether it clearly and unambiguously expresses the parties' intent. Separate from the *Jones* analysis, Miller argues there was no consideration for the Release.

Discussion

1.   Third *Jones* Factor:  Fairness

Miller argues she did not fairly enter into the Release because, had she refused, she would not have been allowed to participate in activities offered by the Home Ranch.[7] She states her sister had already paid for their stay at the Home Ranch, including, presumably, the activities available there.

"[P]rinted form contracts offered on a take it or leave it basis, alone, do not render the agreement an adhesion contract." *Bauer v. Aspen Highlands Skiing Corp.*, 788 F. Supp. 472, 474-75 (D. Colo. 1992). To demonstrate the Release was unfairly entered into,

---

[7] Miller contends that discovery must be allowed to determine whether she would have been allowed to participate in activities had she refused to sign the Release. For purposes of this order, I will assume she is correct, *i.e.*, that the Release was a "take it or leave it" proposition.

Miller must show "that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation, or that [the] services could not be obtained elsewhere." *Id.* at 475 (alteration in quoted material; citations omitted).

"A contract is fairly entered into if one party is not so obviously disadvantaged with respect to bargaining power that the resulting contract essentially places him at the mercy of the other party's negligence." *Hamill v. Cheley Colorado Camps, Inc.*, No. 10CA0138, 2001 WL 1168006 at *3 (Colo. App. March 31, 2011). Horseback riding is not an essential activity, and thus Miller was not "at the mercy" of Home Ranch when she signed the Release. *Id. See Mincin*, 308 F.3d at 1111 (because mountain biking was not an essential activity, the plaintiff "did not enter into the contract from an inferior bargaining position"); *Day v. Snowmass Stables, Inc.*, 810 F. Supp. 289, 294 (D. Colo. 1993) (plaintiff "was free to choose not to go on this ride"); *Bauer*, 788 F. Supp. at 475 ("defendants' recreational services (for rental of ski equipment) were not essential and, therefore they did not enjoy an unfair bargaining advantage").

There is no evidence in the record from which I might determine whether Miller had an opportunity for negotiation regarding the terms of the Release. Miller signed the Release without reading it (although she testified at her deposition that she understood at the time that she was signing a release), and it would be pure speculation now to conclude that she could or could not have altered its terms had she questioned them before signing.[8] Because Miller was engaging in a recreational, non-essential activity, however, I decline

---

[8]   The mere fact that Miller did not read the Release is not grounds to absolve her of its implications. "[I]n the absence of fraud, one who signs a contract without reading it is barred from claiming she is not bound by what she has signed." *Riehl*, 960 P.2d at 138 n.5.

to construe my inability to resolve this issue on the record to mandate a finding of unfairness. Rather, I will treat it as a neutral factor, not supporting either party.

Finally, although Miller testified that horseback riding was one of the activities she planned to do in Colorado, Miller was free to choose not to ride at all. *Day v. Snowmass Stables, Inc.*, 810 F. Supp. at 294.

Because the parties were not "greatly disparate" in bargaining power and because Miller could have obtained horseback riding services elsewhere, I find that the parties fairly entered into the Release.

2.  Fourth *Jones* Factor:  Clear and Unambiguous Language

Regarding the fourth *Jones* factor, I must determine whether the Release clearly and unambiguously expresses the intent of the parties to waive Miller's negligence claim. The interpretation of a written contract is a question of law. *Riehl*, 960 P.2d at 136. "A contractual term is ambiguous when it is susceptible to more than one reasonable interpretation." *Mincin*, 308 F.3d at 1112.

Miller argues the Release is ambiguous and, therefore, invalid. She contends it is unclear whether the Release merely restated the coverage of the Colorado Equestrian Activity statute, C.R.S. § 13-21-119, or went beyond the statute to cover claims for negligence. In support of this argument, Miller relies on *Rowan v. Vail Holdings, Inc.*, 31 F. Supp. 2d 889, 899 (D. Colo .1998), finding ambiguity because of a conflict between a release and the Ski Safety Act. The court in *Rowan* followed the Colorado Court of Appeals' decision in *Riehl*, 944 P.2d 642 (Colo. App. 1997), *rev'd*, 960 P.2d 134 (Colo. 1998). Although *Rowan* acknowledged the Colorado Supreme Court's reversal in *Riehl*, it distinguished that reversal as "on a narrow ground not applicable" to the circumstances

before it. 31 F. Supp. 2d at 899 (noting that, unlike Equine Activity statute, Ski Safety Act did not require releases to contain statutory warning). Unfortunately for Miller, the very "narrow ground" found not applicable in *Rowan* is directly on point here.

The Colorado Equestrian Activity statute requires that every contract entered into by an equine professional contain the following warning: "Under Colorado law, an equine professional is not liable for an injury to or the death of a participant in equine activities resulting from the inherent risks of equine activities, pursuant to section 13-21-119, Colorado Revised Statutes." § 13-21-119(5). The placement of the statutory warning in an equestrian activity contract does not limit an equine professional's liability for negligent acts resulting in injury. *Riehl*, 960 P.2d at 137.

In *Riehl*, the Colorado Supreme Court held that a release very much like the one before me was not fatally ambiguous because it contained the mandatory statutory warning language "as well as a broader clause limiting liability from non-inherent risks." 960 P.2d at 138. Given the statute's mandate that an equine release agreement contain the above language, the *Riehl* court held that the insertion of a broader clause further limiting liability did not render the release ambiguous *per se*. *Id*.

I find *Riehl* directly controlling here and conclude that the Release is not ambiguous *per se* merely because it contained the statutory warning in addition to broader language. I turn next to the specific language of the Release to determine whether its terms are susceptible to more than one meaning.

The Release contains, in addition to the statutory warning, the following language:

> I knowingly and voluntarily assume the risk of death or injury which occurs during my visit to the Ranch. I unconditionally release The Home Ranch Company . . . from any and all liability and responsibility for any and all

> injuries, damages, losses, costs and expenses . . . . I give up and waive any rights to make any claim or to proceed in court on any claim which I might have now, or which might arise in the future, against the Ranch Parties as a result of injury or death of myself or damage, loss or theft of my personal property during my visit to the Ranch from any cause whatsoever. The liability and responsibility unconditionally released by this release is absolute and is not dependent upon nor limited by any questions or findings of negligence.

Motion for Summary Judgment, Exhibit A-3 (ECF No. 31-3). The release is clearly and simply written and is not long or too burdened by legal terms. At her deposition, Miller indicated she understood the Release. The Release covers "any claim," including claims resulting from injury or death, and states that it is "unconditional[ ]" and not limited by a finding of negligence. These terms, on their face, clearly encompass claims based on Home Ranch's negligence.

I conclude that the Release is not ambiguous and plainly expressed the intent to limit Home Ranch's liability for negligence claims, including Miller's claim for her injuries sustained on August 25, 2007. *See Riehl*, 960 P.2d at 138 (release written in simple and clear terms, not inordinately long and complicated, and plaintiff testified at her deposition that she understood she was granting a release); *Hamill*, 2011 WL 1168006 at *5 (agreement not ambiguous where it was only three and a half pages, with minimal legal jargon, and broadly stated intent to release claims for "any injury").

3.  Consideration for the Release

Miller's final argument is that the Release was not supported by consideration. Valid consideration is essential to the existence of an enforceable release. *Bayou Land Co. v. Talley*, 924 P.2d 136, 152 (Colo. 1996). Here, the plain language of the Release states it is "[i]n consideration of use of the Ranch facilities[.]" I conclude that Home Ranch's allowing

Miller to stay on it property and engage in its activities, including horseback riding, was adequate consideration to support the Release.

For the forgoing reasons, I conclude that Release was fairly entered into, plainly expressed an intent to release Miller's negligence claim, and was supported by valid consideration.

Accordingly, it is ORDERED:

1. Defendant's Motion for Summary Judgment, filed October 6, 2010 (ECF No. 31), is granted.
2. This case is dismissed with prejudice.
3. Defendant may have its costs.

DATED at Denver, Colorado, on May 9, 2011.

BY THE COURT:

s/ Walker D. Miller
United States District Judge